I'd like to reserve three minutes for rebuttal. The sole issue on this appeal is whether a state university professor violates a student's rights under the First Amendment if the professor retaliates against the student by depriving that student of the benefit of a positive reference letter because the student petitioned the government for redress of grievances. Clearly, if students were told that professors would not write positive reference letters if they petitioned the government for redress of grievances, this would have a chilling effect on students petitioning the government for redress of grievances. Counsel, would you spell out the timeline? When was the letter written and when was the suit started? The letter was written before the lawsuit was started, but after the administrative complaint was filed. And this Court has recognized that the right to petition the government does include the right exercised in administrative proceedings. Thank you. We do have a Paul v. Davis problem here, don't we? No, Your Honor, we don't have a Paul v. Davis problem. How do you distinguish that? The same way this Court did in Allen v. Schreibner in 1987. It was in that case cited in the brief. It's 812 F2D 420. In Allen v. Schreibner, I read that case in 1987. We've had some since then, which definitely say Paul is a problem here, don't we, with Jeannie? I call it Jeannie. I don't know. G-I-N-I. Las Vegas, Metropolitan. That certainly suggests that Paul v. Davis is something we have to worry about, doesn't it? It would if this were a due process case, Your Honor. Jeannie was a due process case, whereas Allen v. Schreibner was a retaliation for First Amendment exercise case. And that's what our case here is not a due process case at all. It is a retaliation. If you look at Jeannie, the court in Jeannie on page 1044 said, her alleged constitutional injury being terminated without due process was inflicted by her federal employer. She's bringing a lawsuit against the state, or excuse me, against the Las Vegas Metropolitan Police Department and Maloney. And it goes on, Maloney didn't terminate Jeannie's employment without due process and did not know and should not reasonably have known that her federal employer would terminate her employment without due process. And it goes on later and talks about how the case is all about due process. Here, we didn't bring a due process claim at all. We brought a claim under 42 U.S.C. 1983 for retaliating against Mahmoud Dubey for exercising his First Amendment right to petition for redress of grievances. And in that kind of a situation, Highland v. Wander has recognized that the Supreme Court's instructed that the type of rights need not be particularly great in order to find that rights have been violated. And it's a person's rights are unconstitutionally infringed, both where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason. Here, clearly, a positive reference letter is worth more than a penny. If the Supreme Court is saying that withholding a penny for exercising one's First Amendment rights is prohibited, withholding a positive reference letter for having exercised one's First Amendment rights also ought to be? Well, I gather by your argument what you're conceding is that if we look at it through the Paul v. Davis due process lens, the case fails. Is that right? If we looked at it through Paul v. Davis, it would still not fail, because there is more here than simply damage to reputation. There is a deprivation of something which had been promised, namely a positive reference letter. This is more than simply damage to reputation, interfering with his ability to obtain employment. If one cannot get a positive reference letter from one's graduate professor, one has a very difficult time finding employment, especially at another university. What's the principal difference between that and reputation damage? Well, it's more than reputation damage, because it also involves cutting him off from prospective employment, and it also involves depriving him of something which he was, as a benefit, able to receive. And here is a question of not simply saying something negative about somebody. This is not simply a state official saying something negative about somebody. This is a professor with his graduate student promising to give him a positive reference letter, and then he exercises a First Amendment right, and he's deprived of that in retaliation for exercising the First Amendment. But, for example, what's the principal difference between that and, let's say there's no promise, and the professor simply goes out and makes defamatory statements? The result is the same. No, because there is a difference in when one has an expectation of a certain benefit. Not a right to a benefit, but, for example, when someone is deprived of a birthday party, this, in retaliation for exercising First Amendment rights, this court has found retaliation when one is deprived of a volunteer job that he had. There is a deprivation of a benefit that is a government benefit. Namely, getting a positive reference letter from your graduate school professor is a benefit that one can get from going to a state university and graduating and having done a good job while there. That's part of the benefit that one can get from the government. It's not an entitlement, but it's something that certainly benefits a graduate student. And if graduate students are being told, okay, if you exercise your First Amendment rights, you're not going to get that benefit. You're going to be deprived of it. That would have a chilling effect on the exercise of First Amendment rights. And that's the test for First Amendment, and that's the reason why this court can't say it's okay for graduate school professors to say to their students, if you exercise your First Amendment rights, you're not going to get positive reference letters. And that's really what the district court judge did. You're about down to one minute, so I wanted to give you time to reserve for rebuttal. I know you wanted to save three. Thank you. May it please the Court. I'm Rebecca Herbst on behalf of the defendant at plea, Dinshaw Contractor. I think it should be noted on your file, it's just listing him as Dinshaw, that's his first name, and our briefing referred to him as Dr. Contractor. The district court properly dismissed Dubay's claim because he cannot show that Contractor deprived him of correct in noting that this claim fails because of Paul v. Davis. Well, is it a Paul v. Davis case, or is it more like Hyland v. Wander? No, Your Honor, I believe it is more like a Paul v. Davis case, because in Paul v. Davis, the court says that you have to be denied a tangible, you have to have a tangible injury. In Paul v. Davis, it says a tangible injury can be an adverse employment action, like the loss of a job. In Hyland v. Wander, the plaintiff lost volunteer status. And so what they were saying was that is an adverse employment action, that you are losing the right to a job. And it was, in Hyland v. Wander, it was your rights or benefits with the State. I think the plaintiff's argument here is, although he doesn't give up on Paul v. Davis and the stigma plus, is that really this isn't a due process case, it's a retaliation First Amendment case, and the bar is lower. How do you respond to that? Your Honor, I absolutely disagree with the appellant's analysis of the Jeanne case. I think Jeanne is exactly on point. There were two issues in Jeanne v. Las Vegas Metropolitan Police Department. The first was a due process claim. Secondly, in subsection B of the case, the court says that the court intends that where a section 983 claim rests on retaliation for the exercise of First Amendment rights, no deprivation of property needs to be pledged. The court merrily rejected that claim and said, look, this court held in 1988 in Patton v. County of Kings that you cannot avoid the constrictor of Paul v. Davis by now labeling it a violation of First Amendment rights. You still have to have a tangible injury. The other distinction with this case is that the appellant keeps citing to student context or student speech cases. First, Mr. DuVey was no longer a student at the time this was written. Even if he had been, however, in the student context cases, there are still unreasonable injuries. In Pinard, it was students who were suspended from the basketball team because they had spoken out about the coach. In Goss v. Lopez, it was students who were suspended from school for ten days without due process rights. And Paul v. Davis looked at the Goss v. Lopez case, though, and said the tangible injury is being suspended from school. Here, there's no tangible injury to Mr. DuVey. And the ---- Sotomayor, counsel, counsel, if it could be shown that he would have gotten this job at this other university if this adverse letter had not been sent, would he have a proper claim under Paul v. Davis? No, he would not, Your Honor. And I think the case that's exactly on point in your analysis or your hypothetical is the Siegert v. Gilley case, which was another United States Supreme Court case where an employee resigned from a job and sought employment at an Army hospital overseas. The Army hospital, in asking to credential him, contacted his former supervisor and asked for a reference letter. That former supervisor wrote that the plaintiff was the most inept, untrustworthy, and worst person he had supervised in 13 years. To no surprise, the plaintiff was not hired by this other hospital. And in Siegert v. Gilley, the court said, look, all of the harms in not getting that other job stem from the reputational harm caused by that negative reference letter. And that was not a constitutional violation. Perhaps the plaintiff in that case and perhaps the plaintiff in this case might have a State tort claim under the State defamation laws. But just because the alleged wrongdoing is by a government actor does not transform it into a constitutional claim. What I would like to point out, a problem with Mr. Dubé's case, if you take away the requirement in Paul v. Davis that the plaintiff has to suffer a tangible injury, it could lead to an absurd result in this case. Let's say as a hypothetical that we just look at the restriction on First Amendment rights and whether it would have a chilling effect. Instead of the letter giving his opinions, had Dr. Contractor written, you ask for my view on how he interacts with others. I will tell you only that he has sued one of my colleagues.  He has sued one of his colleagues. Now, Mr. Dubé, under his analysis, would be able to argue that you had a chilling effect on my First Amendment rights if you're going to tell somebody that I had sued them. Because I think most people would agree an employer might be curious or question or think twice about hiring somebody who has sued other people. Under Mr. Dubé's analysis, by transforming this into a constitutional claim, you would completely take away Dr. Contractor's right to argue, no, truth is a defense. If it were a defamation claim, as it should be, he can argue, that was absolutely true. This is not a defamatory statement. And what he said to counsel, that's not quite the facts of this case. Apparently, there was an allegation about improper use of university property, which might be false or misleading. So we do have that additional thing in this case. You are correct, Your Honor. I was simply trying to give a hypothetical how if you were to turn any defamation case into, if you could look at it strictly under the First Amendment viewpoint that Mr. Dubé has, you no longer have that truth defense. And that's why it's our point that, no, under Paul v. Davis, you still have to show a tangible injury. And there are two Ninth Circuit Supreme Court cases that say or, excuse me, Ninth Circuit cases that say by trying to allege this is First Amendment retaliation isn't sufficient to get you out of the Paul v. Davis framework. I think, though, that what Mr. Dubé is arguing is that the promise makes the difference in this case. That was what I questioned Plaintiff's counsel about. And he says, well, no, the promise makes the difference. It's not purely a reference letter case. The difference in the situation, Your Honor, though, is that Mr. Dubé has pointed to no policy, no statute, no case law, no regulation that guarantees him a positive reference letter. All of the cases that have looked at a tangible injury are either in the employment context, the right to an education, or, as Paul says, it's a right or status previously recognized by state law. And there is no state law that recognizes the right to a reference letter. I would agree with Mr. Dubé that if the University of Arizona had a policy that we will give all students positive reference letters except for those students who file grievances, that's a different situation, and that could violate First Amendment rights. But here, there is no state-recognized benefit of a reference letter. The other cases in the Ninth Circuit and the Supreme Court that have recognized interests are in terms of welfare benefits, unemployment compensation, gas permits, taxes, all things that are recognized under state law as benefits given by the state. There is no policy in this case. I would also like to point out that the district court did not rule on our motion to dismiss on the qualified immunity purposes, but you may certainly affirm the decision for any reason. If you were to find that Mr. Dubé possibly could have established a constitutional violation, we ask that you analyze then the second step of the qualified immunity analysis under Saucier v. Katzen. Would a reasonable official have known that his conduct violates the law? And we think there's every reason. But in that instance, we would have to take the plaintiff's allegations and the complaint as true, correct? That is correct, Your Honor. And we couldn't look at anything you might say in that regard. We'd have to apply it directly as the plaintiff has suggested in the complaint. Those facts. Those facts are true, yes. Don't you think that's a better way for us then because we would be taking those facts and it really hasn't had any discovery? We really haven't been very far along. Isn't it better to send this back to the district court to make that determination in the first place? To send it back to the district court to determine whether qualified immunity is appropriate? Yes. I understand, or I think I understand your question. Respectfully, no. I still think on the qualified immunity analysis, you can't get past the first step that there's a constitutional deprivation. In Siegert v. Daley, the Supreme Court case, the plaintiff tried to argue, look, I've alleged all of this malice. I allege that this letter was taken against me for an improper purpose. And the court still said no, qualified immunity was appropriate because you can't get past the constitutional violation. I don't think you need to send it back to the district court because I think you could determine that a reasonable official could rely on Siegert v. Daley, Paul v. Davis, the Genie case. There are plenty of cases on point showing that Dr. Contractor had the right to respond to this letter. Thank you, counsel. Thank you. Your Honor, I don't think you need to send it back to the district court for determining qualified immunity because qualified immunity clearly doesn't apply. This court in 2003, before Contractor wrote his letter in Kosalter v. City of Salem, said the precise nature of the retaliation is not critical to the inquiry of First Amendment retaliation cases. The goal is to prevent or redress actions by a government actor that chills the students' rights under the First Amendment petition to redress grievances by withholding a positive reference letter and negative and instead writing a negative reference letter or exercising their First Amendment rights. This court prior to this has held withholding a birthday party or withholding a penny is sufficient sanction for First Amendment rights violation. Certainly, a positive reference letter to a graduate student is clearly worth more  than a negative reference letter. Thank you. Thank you, Your Honor. Thank you, counsel. The case just argued to be submitted for decision. And the next case on the oral argument calendar is McKay v. Hart. Isn't it superstition? Nope. I'm sorry. I didn't ---- I missed a case. Those of you who are going to argue superstition, crushing, don't be alarmed. I just got out of order. So we'll hear the argument in superstition, crushing v. Travelers Insurance Company.
judges: Fletcher B. , Thomas, Smith R.